## THE SNAPPER KING.

### UNITED STATES v. FLECHAS.

### No. 9989.

Circuit Court of Appeals, Fifth Circuit.

April 17, 1942.

Allan B. Lutz, Atty., Dept. of Justice, of Washington, D. C., and Toxey Hall, U. S. Atty., and A. Y. Harper, Asst. U. S. Atty., both of Jackson, Miss., for appellant.

E. J. Ford, of Pascagoula, Miss., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This is a libel in rem for the forfeiture of the vessel "Snapper King" on the ground she was employed in a trade other than that for which she was licensed, in violation of Sec. 4377, Rev.Stat., 46 U.S.C.A. § 325, and to collect a penalty of $500, under the provisions of Sec. 4499, Rev.Stat., 46 U.S. C.A. § 497, for carrying passengers for hire without having been inspected as required by R. S. Sec. 4426, 46 U.S.C.A. § 404. The appeal is from a judgment dismissing the libel. The facts are undisputed.

The Snapper King is a motor boat 66 to 70 feet in length and about 54 gross tons. It is powered by a Diesel engine and cost with her engine approximately $15,000. She was built and equipped for snapper fishing, has bunks for the crew but no

accommodations for passengers. She was licensed for the mackerel fisheries and is regularly engaged in fishing. Her home port is Pascagoula, Mississippi. Respondent, M. M. Flechas, is her owner and master.

On two occasions, July 10, 1938, and April 22, 1939, the Snapper King was hired by parties of young men, to take them from Pascagoula to Horn Island, an island about 10 miles south of Pascagoula, in Mississippi Sound, the trips to be completed in about 12 hours, for the purpose of fishing and bathing. Flechas was paid the sum of $15 for each trip, regardless of how many young men were transported.

The statute provides, inter alia, for forfeiture "whenever any licensed vessel * * * is employed in any other trade than that for which she is licensed * * * or is found with * * * any taxable * * * liquors, on which the duties or taxes have not been paid * * *. But vessels which may be licensed for the mackerel fisheries shall not incur such forfeiture * * * in catching cod or fish of any other description whatever."

The first inquiry is whether the Snapper King was engaged in a trade other than for which she was licensed. If she was not carrying passengers for hire she was not required to be inspected. The agreements to hire were charters. The main purpose of the trips was fishing. The charterers controlled the movements of the vessel. Trade is synonymous with business and implies a regular occupation, not a temporary turning aside from some other trade. The Nymph, 18 Fed.Cas. 506, No. 10,388; United States v. Picou, 5 Cir., 71 F.2d 854. In the following cases it was held that the vessel was not employed in trade other than for which she was licensed. The Willie G., 30 Fed.Cas. 40, No. 17,762; The Swallow, 23 Fed.Cas. 494, No. 13,666; The Chiquita, 9 Cir., 44 F.2d 302. Libellant cites The Mineola, 1 Cir., 16 F.2d 844, and cases when the vessel was engaged in transporting non-tax paid liquor, a separate violation of the statute. The cases cited by appellant are not in point.

The statute is highly penal and must be strictly construed. United States v. Worthington, Inc., 9 Cir., 117 F.2d 936, 937. Technically, the Snapper King was carrying passengers for hire on two occasions but that is not enough to work her forfeiture. We consider the intent of the statute is to penalize a vessel for turning aside from the trade for which she is licensed to engage in another trade as a regular course of business. To forfeit a vessel worth $15,000 for carrying passengers on two separate and unconnected occasions, under conditions here shown, would be so drastic as to shock the conscience. We will not attribute any such intention to Congress.

The judgment is affirmed.